# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————————

|  |  |  |
|---|---|---|
| DEE DEE CHAVERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1911 (ESH) |
| | ) | |
| ERIC K. SHINSEKI, | ) | |
| Secretary, | ) | |
| U.S. Department of Veterans Affairs, | ) | |
| | ) | |
| Defendant. | ) | |

———————————————————————————

## MEMORANDUM OPINION

Plaintiff Dee Dee Chavers is an employee of the United States Department of Veterans Affairs ("VA" or "the agency"). She claims that her employer discriminated against her on the basis of her disability, discriminated against her by subjecting her to a hostile work environment based on her gender, and retaliated against her for complaining about that discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.* Defendant has moved for judgment on the pleadings or, in the alternative, summary judgment on all of plaintiff's claims. Having considered defendant's motion, the record herein, and for the reasons set forth below, the Court will grant the motion.

## BACKGROUND

At all times relevant to this case, plaintiff was employed as a Program Specialist in Nursing Education at the Veterans Affairs Medical Center ("VAMC") in Washington, D.C. (Pl.'s Opp'n ("Opp'n") to Def.'s Mot. to Dismiss and Mot. for J. on the Pleadings or in the Alternative, Mot. for Summ. J. ("Mot."), Statement of Genuine Issues and Affirmative Statement

of Material Facts ("Pl.'s SMF") at 1 ¶ 1.)  During the relevant period, plaintiff was a thirty

percent or greater compensable service-connected disabled veteran.  (Mem. in Supp. of Mot.

("Mem.") at 29; Compl. ¶ 7.)  She asserts that she suffers from a variety of medical conditions,

including some that cause "chronic pain in her back and legs," that substantially limit walking,

standing, and sitting.  (Pl.'s SMF at 10 ¶¶ 31-32.)

## I.     THE ALLEGED HARASSMENT

In 2004, plaintiff's work area was moved to the VAMC's basement, putting her in the

vicinity of the Building and Trades Unit ("BTU") of the VAMC's Facilities Management

Service ("FMS").  (Pl.'s SMF at 1-2 ¶¶ 2, 4.)  One of the carpenters working in the BTU was

Albert Rogers, whom plaintiff described as a "very friendly" and "very jolly" "350-pound

muscular guy with a loud voice" who "made it a point to know as many people as possible" and

"would cheerfully greet" people he saw by "smil[ing] and speak[ing]" to them "whether he knew

[them] or not . . . ."  (Def.'s Mot. to Dismiss and Mot. for J. on the Pleadings or in the

Alternative, Mot. for Summ. J. ("Mot."), Ex. 1 (Chavers Dep., Oct. 29, 2008) ("Chavers Dep."[1]

at 45:5-11, 55:4-8, 67:11-18.)

Plaintiff had several work-related interactions with Rogers via telephone and electronic

work order, and following her 2004 relocation to the VAMC basement, she also encountered him

briefly in the hallway on several occasions.  (Pl.'s SMF at 2 ¶¶ 3-4.)  On two or three of those

occasions, Rogers offered to "'take [plaintiff] out to lunch'" (Chavers Dep. at 43:19-25 (quoting

Rogers), 48:2-5), but plaintiff declined, at which point Rogers would, in plaintiff's words, "latch

onto the next person."  (Chavers Dep. at 43:19-25; *see also* Pl.'s SMF at 2 ¶ 4.)  On a separate

occasion, plaintiff told her supervisor, Dr. Suzanne McNicholas, that Rogers had made

---

[1] Defendant also submitted additional excerpts from this deposition as Exhibit 1 to his
reply.  (*See* Def.'s Reply in Supp. of Mot. ("Reply"), Ex. 1.)

comments to a nurse that the nurse had found "inappropriate."  (Opp'n, Decl. of Dee Dee Chavers ("Chavers Decl.") ¶ 34).)

At approximately 1:00 p.m. on June 7, 2005, plaintiff was exiting the nursing education and research classroom and locking the door behind her when she encountered Rogers in the "brightly lit" hallway where "a lot of people" were present.  (Pl.'s SMF at 2 ¶ 5; Chavers Dep. at 54:4-55:1, 61:11-13.)  Rogers was standing in front her, hunched over his red steel tool cart, blocking her exit with the cart.  (Pl.'s SMF at 2 ¶ 6; Chavers Dep. at 51:7-11.)  Rogers told her that he would not move until she gave him a kiss.  (Pl.'s SMF at 2 ¶ 6.)  When plaintiff asked him to move the cart, Rogers replied, "Not until you give me a kiss for the work that I've done." (*Id.* at 2 ¶ 7.)  Plaintiff then attempted to move Rogers and the cart by pushing against them for "probably a few seconds" with the right side of her body, straining her arm in the process. (Chavers Dep. at 57:13-15; Pl.'s SMF at 2 ¶ 8.)  Plaintiff did not call out for help.  (*See* Chavers Dep. at 61:18-62:4.)  Raymond Doster, a medical records supervisor, came over after noticing plaintiff and Rogers and told Rogers to leave plaintiff alone, at which point Rogers left.  (Pl.'s SMF at 2 ¶ 9; Chavers Dep. at 59:6-8.)  The entire incident lasted "[p]robably over a minute." (Chavers Dep. at 56:14-20.)

Immediately following the incident, plaintiff returned to her office and "cried for about an hour."  (Chavers Dep. at 59:12-15.)  Feeling pain throughout the right side of her body, plaintiff took the stairs up one floor to the occupational health unit, but because it was too crowded, she left without checking in or being evaluated and returned to her office.  (*See id.* at 59:15-60:21.)  Feeling unable to focus, she left the office shortly before she was scheduled to get off of work at 3:00 p.m.  (*Id.* at 60:22-24.)

Within a day or two of the Rogers incident, Doster related what he had observed to Larry

Osborne, the BTU supervisor.  (Pl.'s SMF at 6-7 ¶ 20.)  On June 9, 2005, Osborne orally

instructed Rogers not to go near plaintiff's office.  (Def.'s Statement of Material Facts as to

Which There Is No Genuine Issue ("Def.'s SMF") ¶ 21.)[2]  Plaintiff did not talk about the Rogers

incident with anyone, not even friends or family, until one week later.  (Chavers Dep. at 64:18-

25.)  On June 13, 2005, she reported the incident to Carol Mather, a specialist in the agency's

Equal Employment Opportunity ("EEO") office.  (*See* Mot., Ex. 7 (Carol Mather EEO Aff., Jan.

19, 2006) ("Mather Aff.") ¶ 5.)  The EEO office began an investigation into the Rogers incident,

and Mather learned that two other female employees reported incidents with Rogers after

plaintiff's incident.  (*Id.* ¶¶ 15-17; Mot., Ex. 6 (Carol Mather Dep., Aug. 2, 2006) at 8:17-19; *see*

*also* Chavers Dep. at 68:21-69:17.)

On June 14, 2005, plaintiff reported the incident to the VA Police Service and

McNicholas, her immediate supervisor.  (*See* Chavers Dep. at 64:18-25; Pl.'s SMF at 3 ¶ 11, 7 ¶

22; Mot., Ex. 15 (McNicholas Dep., Aug. 2, 2006) ("McNicholas Dep.") at 14:2-18.)  Plaintiff

requested that Rogers be restricted to certain areas of the building, that he not be permitted to

interact with her, and that a panic button be installed in her office.  (Chavers Dep. at 74:4-11.)

On June 15 or 16, McNicholas spoke with David King of the EEO office and later spoke with

Osborne, telling him that she wanted Rogers to have no further contact with plaintiff.

(McNicholas Dep. at 14:12-15:12, 19:2-3; Mather Aff. ¶ 18.)  McNicholas also advised

---

[2] Plaintiff states that she "has insufficient information to admit or deny" this fact (Pl.'s SMF at 7 ¶ 21), which defendant supports with Osborne's deposition testimony.  (*See* Mot., Ex. 5 (Larry Osborne Dep., Aug. 6, 2006) at 22-23.)  Local Civil Rule 7 requires that plaintiff "set[] forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated . . . ."  Local Civ. R. 7(h).  Because plaintiff has failed to dispute defendant's assertion, the Court accepts it as true.  *See Potter v. District of Columbia*, 558 F.3d 542, 548 (D.C. Cir. 2009) ("Under Rule 7(h) of the district court's local rules, the moving party must submit a statement of material facts as to which it asserts there is no genuine issue, and the district court may accept these facts as true if the opposing party does not dispute them." (citations omitted)).

plaintiff's second-level supervisor, Geraldine Feaster, about the Rogers incident.  (*See* McNicholas Dep. at 23:21-24:6.)

On June 20, 2005, McNicholas and Osborne met with Rogers to discuss the incident, and McNicholas told Rogers that he was to avoid contact with plaintiff; the next day, Rogers went on unpaid leave.  (McNicholas Dep. at 19; Mot., Ex. 16 (Osborne Mem.) at 1-2; *see* Mot., Ex. 24 (June 20, 2005 Rogers Mem.) ("Rogers Mem.").)  On July 1, Rogers took early retirement and the EEO investigation was finalized.  (*See* Rogers Mem.; Mather Aff. ¶¶ 23, 30; Chavers Dep. at 69:6-9.)  Despite Rogers' retirement, plaintiff still requested the installation of a panic button due to her desire to "feel safe in [her] environment," because the VAMC basement was connected to an open garage which, she believed, Rogers or "[a]ny vagrant" could enter "at any point in time."  (Chavers Dep. at 74:16-22.)  However, plaintiff never saw Rogers after the June 7, 2005 incident, and her only basis for believing that Rogers would return was "the fear that he [in]flicted" upon her.  (*Id.* at 74:23-75:3, 75:17-18.)  The panic button that plaintiff had requested was installed in February 2006.  (Chavers Decl. ¶ 39.)

On September 14, 2005, plaintiff filed a formal complaint of discrimination regarding the Rogers incident. (Compl. ¶ 34.)  Defendant does not challenge plaintiff's exhaustion of her administrative remedies with respect to this claim.

## II.     THE NON-SELECTIONS

### A.     Vacancy Announcement NEU-05-90 (August 2005)

On or about August 23, 2005, plaintiff was not selected for the position of Administrative Office in the Neurology Service, which had been advertised in vacancy announcement NEU-05-90.  (Chavers Dep. at 130:1-5; Chavers Decl. ¶ 56.)  On August 25, she emailed Keith Manning and two other individuals to inquire why she was not selected; to assert that her experience and

education "extend[ed] far beyond" that of the selected individual; to seek specific information about the selection process; and to request reconsideration.  (Mot., Ex. 22 ("Chavers-Manning Emails") at 1.)  Manning responded that plaintiff was "qualified, referred[,] but not selected for the position," and advised her to contact the Neurology Service if she wished to inquire why she was not selected.  (*Id.*)  On September 1, plaintiff responded to thank Manning and stated that she would talk to Dr. Pincus, the selecting official.  (*See id.*; Chavers Dep. at 118.)  That same day, plaintiff received an email notification of the non-selection.  (*See* Mot., Ex. 18 ("Kruger-Deal Emails") at 2.)

**B.     Vacancy Announcement HRMS-05-165 (September 2005)**

On or about September 30, 2005, plaintiff was not selected for the position of Human Resources Specialist, which had been advertised in vacancy announcement HRMS-05-165. (Chavers Decl ¶ 58.)  Plaintiff asserts that did not receive a notice of this non-selection until "after Thanksgiving 2005."  (Kruger-Deal Emails at 1.)

**C.     Vacancy Announcement OSP-05-221A (March 2006)**

On or about March 9, 2006, plaintiff was not selected for the position of Program Specialist, which had been advertised in vacancy announcement OSP-05-221A.  (Chavers Decl. ¶ 59.)  Plaintiff asserts that she did not receive the non-selection notice until "late May 2006." (Kruger-Deal Emails at 1.)

**D.     Vacancy Announcement DEN-06-45 (August 2006)**

On or about August 7, 2006, plaintiff learned that she had not been selected for the position of Administrative Officer in the Dental Service, which had been advertised in vacancy announcement DEN-06-45.  (Chavers Decl ¶ 61.)  The selecting official was Dr. Glenn Haggan, chief of the VAMC's Dental Service, who was aided in making the decision by assistant chief

Dr. Don Denucci.  (Pl.'s SMF at 11 ¶ 35; Chavers Decl. ¶¶ 62-64; Mot., Ex. 2 (Dee Dee Chavers

EEO Aff., July 18, 2007) ("Chavers Aff.") ¶ 9.)  The selected candidate was Angela Johnson, a

non-veteran, who at the time worked at the VAMC in Richmond, Virginia.  (Chavers Aff. ¶¶ 13-

14.)

      **E.**      **Vacancy Announcement NURS-06-64 (September 2006)**

On or about September 11, 2006, plaintiff was not selected for the position of Staff

Assistant in the Nursing Service, which had been advertised in vacancy announcement NURS-

06-64.  (Chavers Decl. ¶¶ 80, 82.)  Feaster, who was the Chief Nurse Executive, was the

selecting official, and the selected candidate was Michelle Newman.  (*Id.* ¶¶ 81, 83.)

      **F.**      **Plaintiff's EEO Filings**

On September 25, 2006, plaintiff first contacted an EEO counselor at the agency's Office

of Resolution Management ("ORM") regarding the non-selections.  (Pl.'s SMF at 9 ¶ 28; *see*

Mot., Ex. 19 ("EEO Counselor's Report") at 1.)  During informal EEO counseling, plaintiff only

addressed her claims for the fourth and fifth non-selections.  (Pl.'s SMF at 9 ¶ 28; *see* EEO

Counselor's Report at 3.)  On October 25, she was informed that if she were to file a formal EEO

complaint of discrimination, any claim not discussed with ORM might not be accepted for

formal complaint processing.  (Pl.'s SMF at 9 ¶ 28.)  On November 13, plaintiff filed a formal

EEO complaint alleging retaliation and disability discrimination for all five non-selections.  (*Id.*;

*see* Mot., Ex. 20 (EEO Compl., Nov. 13, 2006) at 1.)

On December 27, 2006, ORM requested that plaintiff provide (1) the dates and

announcement numbers for the first three non-selections, which had not previously been

discussed with an EEO counselor, and (2) plaintiff's reasons for failing to raise those three

claims with the EEO office within 45 days of the non-selections' effective dates, as required by

29 C.F.R. § 1614.105(a).  (*See* Mot., Ex. 21 (Jan. 19, 2007 Partial Acceptance of EEO

Complaint) ("ORM Decision") at 2.)  On January 10, 2007, plaintiff submitted the requested

information and asserted that she did not comply with the 45-day time limit for the first non-

selection because she was coping with trauma from what she characterized as her "sexual

assault" by Rogers, and because she was not informed about the September 2005 and March

2006 non-selections until approximately 60 days after they occurred.  (*See id.*)  ORM declined to

accept those justifications for extending the time limit and, accordingly, dismissed plaintiff's

claims for the first three non-selections.  (*Id.*)

      However, ORM concluded that plaintiff timely pursued her claims based on the August

2006 and September 2006 non-selections and accepted those for further processing.  (ORM

Decision at 3.)  Defendant does not dispute that plaintiff properly exhausted those non-selection

claims.  Plaintiff filed the instant action on October 23, 2007.

## ANALYSIS

## I.    LEGAL STANDARDS

### A.    Standard of Review

      Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment

shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and

affidavits show that there is no genuine issue of material fact, and that the moving party is

entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247

(1986).  "A dispute about a material fact is not 'genuine' unless 'the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'"  *Haynes v. Williams*, 392 F.3d

478, 481 (D.C. Cir. 2004) (quoting *Anderson*, 477 U.S. at 248).  A moving party is thus entitled

to summary judgment against "a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Waterhouse v. District of Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *see also Wash. Post. Co. v. U.S. Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. If the non-movant fails to point to "affirmative evidence" showing a genuine issue for trial, *Anderson*, 477 U.S. at 257, or "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). "While summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of her obligation to support her allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Calhoun v. Johnson*, No. 95-2397, 1998 WL 164780, at *3 (D.D.C. Mar. 31, 1998), *aff'd* No. 99-5126, 1999 WL 825425, at *1 (D.C. Cir. Sept. 27, 1999) (internal citation omitted).

### B.    Title VII and Rehabilitation Act

Under Title VII of the Civil Rights Act of 1964, it is an "unlawful employment practice" for employers "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It is also unlawful to retaliate against an employee because he "has opposed any practice made an unlawful employment practice" by

Title VII or because she "has made a charge, testified, assisted, or participated in any manner in

an investigation, proceeding, or hearing" under Title VII.  *Id.* § 2000e-3(a).  Similarly, the

Rehabilitation Act prohibits federal agencies from engaging in employment discrimination

against disabled individuals.  *See* 29 U.S.C. § 794(a).  The Act employs the same standards to

define discrimination as those employed in cases arising under the Americans with Disabilities

Act of 1990 ("ADA").  *See id.* § 794(d); *see also Breen v. Dep't of Transp.*, 282 F.3d 839, 841

(D.C. Cir. 2002) (applying ADA employment discrimination standards to Rehabilitation Act

claim).

Traditionally, courts have examined Title VII and Rehabilitation Act claims for

discrimination under the three-step burden-shifting framework set forth in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973).  However, where an employer has asserted legitimate, non-

discriminatory reasons for the actions being challenged by the plaintiff,

> the district court must resolve one central question: Has the employee produced
> sufficient evidence for a reasonable jury to find that the employer's asserted non-
> discriminatory reason was not the actual reason and that the employer
> intentionally discriminated against the employee on the basis of race, color,
> religion, sex, or national origin?

*Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).  This principle

applies equally to claims of retaliation under Title VII and disability discrimination.  *See Jones v.*

*Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009); *Adeyemi v. District of Columbia*, 525 F.3d 1222,

1226 (D.C. Cir. 2008).

A plaintiff has the burden of persuasion to show that a defendant's proffered non-

discriminatory reason for the challenged action is a pretext.  *Morgan v. Fed. Home Loan*

*Mortgage Corp.*, 328 F.3d 647, 654 (D.C. Cir. 2003).  A plaintiff can carry this burden by

showing that a non-discriminatory reason offered by a defendant is false, *Montgomery v. Chao*,

546 F.3d 703, 707 (D.C. Cir. 2008), or otherwise "presenting enough evidence to allow a

reasonable trier of fact to conclude that the employer's proffered explanation is unworthy of credence." *Desmond v. Mukasey*, 530 F.3d 944, 962 (D.C. Cir. 2008) (internal quotation marks omitted).  Where "the employer's stated belief about the underlying facts is reasonable in light of the evidence, however, there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts," and summary judgment is appropriate.  *Brady*, 520 F.3d at 495; *see also Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 27-28 (D.C. Cir. 1997) ("[I]f [a plaintiff] is unable to adduce evidence that could allow a reasonable trier of fact to conclude that [the defendant's] proffered reason was a pretext for discrimination, summary judgment must be entered against [the plaintiff].")

## II.      COUNT 1: HOSTILE WORK ENVIRONMENT

Plaintiff contends that she was "subjected to physically threatening conduct sufficient to qualify as hostile workplace harassment" during the incident where Rogers "block[ed] her path with his heavy duty steel work cart" and "demanded that she give him a kiss."  (Opp'n at 21.) She argues that "[a]lthough this particular incident occurred only one time, it was sufficient to create a hostile environment."  (*Id.*)  The Court disagrees, for the Rogers incident does not rise to the level of severity necessary to be actionable on its own under Title VII.

To sustain a hostile work environment claim, "a plaintiff must show that [her] employer subjected [her] to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (citations omitted).  This standard is designed to be "sufficiently demanding" so that "Title VII does not become a 'general civility' code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner*

*Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).  "'[C]onduct must be *extreme* to amount to a

change in the terms and conditions of employment,'" *George v. Leavitt*, 407 F.3d 405, 416 (D.C.

Cir. 2005) (quoting *Faragher*, 524 U.S. at 788) (emphasis added), and "a sexually objectionable

environment must be both objectively and subjectively offensive, one that a reasonable person

would find hostile or abusive, and one that the victim in fact did perceive to be so."  *Faragher*,

524 U.S. at 787.

    "While a single, unsolicited physical advance or comment may be inappropriate, such

conduct does not automatically amount to a Title VII violation."  *Fowler v. District of Columbia*,

404 F. Supp. 2d 206, 211 (D.D.C. 2005).  Rather, such "'isolated incidents'" must be

"'extremely serious'" in order to "'amount to [a] discriminatory change[] in the terms and

conditions of employment.'"  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001)

(rejecting sexual harassment claim based on single incident) (quoting *Faragher*, 524 U.S. at

788).  For example, in the cases cited by plaintiff, other courts have held that isolated incidents

of violent physical contact can rise to the level of altering employment conditions.  *See Smith v.

Sheahan*, 189 F. 3d 529, 531-33 (11th Cir. 1999) (co-worker "called [plaintiff ] a 'bitch,'

threatened to 'fuck [her] up,' pinned her against a wall, and twisted her wrist severely enough to

damage her ligaments, draw blood, and eventually require surgical correction"); *Lockard v. Pizza

Hut, Inc.*, 162 F.3d 1062, 1067, 1072 (10th Cir. 1998) (restaurant customer grabbed plaintiff by

her hair and then grabbed her breast and placed his mouth on it); *Redman v. Lima City Sch. Dist.

Bd. of Educ.*, 889 F. Supp. 288, 291-93 (N.D. Ohio 1995) (co-worker engaged in "physical

assault" by forcing plaintiff into workplace basement, forcing her against wall, and fondling and

rubbing against her in a sexual manner until she vomited).[3]

---

    [3] The remaining case cited by plaintiff is distinguishable because it appears to have

By contrast, Rogers did not act violently during the June 7, 2005 incident.  Nor did he initiate any physical contact with plaintiff or engage in lewd sexual commentary.  Rather, for about one minute in a "brightly lit" "busy hallway" where other people were present (Chavers Dep. at 54:4-55:1), Rogers blocked plaintiff's exit path from a classroom with a steel cart, told her he would not move until she gave him a kiss, but did not put his hands on plaintiff, even when she attempted to physically move him away.  (*See* Pl.'s SMF at 2-3 ¶¶ 5-10; Chavers Dep. at 73:4-16.)  Other than obstructing plaintiff's path, Rogers took no physical action against her. (*See* Chavers Dep. at 73:17-20.)

Notwithstanding plaintiff's subjective feelings about the event, such conduct is far less extreme than isolated incidents of nonconsensual physical contact that this Court and others have found to be insufficiently severe to sustain a hostile work environment claim.  *See, e.g.*, *Fowler*, 404 F. Supp. 2d at 211 (plaintiff's colleague allegedly had "'announced' during a faculty meeting that he was 'turned on by the dress that a teacher was wearing' and then 'squeezed the teacher's thigh'" (quoting plaintiff's comments)), *aff'd*, 210 F. App'x 4, 5 (D.C. Cir. 2006); *Tatum v. Hyatt Corp.*, 918 F. Supp. 5, 6-7 (D.D.C. 1994) (co-worker wrapped his arms around plaintiff's neck and body, rubbed against plaintiff as if to simulate sexual intercourse, made comments about her physical attractiveness, and placed a piece of ice in her skirt pocket); *Paul v. Northrop Grumman Ship Sys.*, 309 F. App'x 825, 826 (5th Cir. 2009) (co-worker confronted plaintiff for "approximately a minute and a half" and made contact with her breasts, hips, and buttocks "in the presence of another supervisor who did not intervene"); *Meriwether v.*

---

actually involved *multiple* incidents, as well as nonconsensual intimate contact.  *See Barrett v. Omaha Nat'l Bank*, 584 F. Supp. 22, 24-25, 29-30 (D. Neb. 1983) (rejecting harassment claim on *respondeat superior* grounds but finding that co-worker's activities during business trip, "taken in their totality," sustained *prima facie* showing of sexual harassment, where conduct included sexual comments and touching plaintiff's crotch, thighs, and breast while traveling to and attending conference), *aff'd*, 726 F.2d 424 (8th Cir. 1984).

*Caraustar Packaging Co.*, 326 F.3d 990, 992-93 (8th Cir. 2003) (co-worker forcefully grabbed plaintiff's buttock near her upper thigh and later joked about the incident); *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 528, 534-35 (7th Cir. 1993) (supervisor put his hand on plaintiff's leg and kissed her until she pushed him away, and in later incident, lurched at plaintiff and tried to grab her).  Based on this case authority, the Court concludes that Rogers' alleged conduct was similarly "deplorable but not so severe or persistent as to constitute a change in terms and conditions of employment."  *Williams v. Verizon Wash., DC, Inc.*, 266 F. Supp. 2d 107, 124 (D.D.C. 2003) (rejecting sexual harassment claim based on incident where plaintiff's co-worker "repeatedly told [her] 'you know you want me' and tried to get her agreement to meet him in a hotel room").  Therefore, the Court grants summary judgment as to Count 1.

### III.   COUNTS 2 AND 3: NON-SELECTION

Plaintiff alleges that defendant discriminated against her on the basis of her disability (Count 2) and retaliated against her for complaining about sexual harassment (Count 3) by declining to select her for five positions within the agency.  With respect to the non-selections for vacancy announcements NEU-05-90, HRMS 05-165, and OSP-05-221A, plaintiff concedes that she did not administratively pursue her claims within the time limit imposed by regulation, and the Court rejects her arguments for applying the doctrine of equitable tolling.  With respect to the non-selections for vacancy announcements DEN-06-45 and NURS-06-64, defendant contends that the selected individuals were the more qualified applicants.  Even assuming without deciding that plaintiff qualifies as "disabled" under the Rehabilitation Act,[4] the Court

---

[4] The Court notes that the D.C. Circuit has recently clarified that the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008), which went into effect on January 1, 2009, does not have retroactive effect.  *See Lytes v. D.C. Water & Sewer Auth.*, 572 F.3d 936, 940 (D.C. Cir. 2009).  Therefore, contrary to plaintiff's argument (*see* Opp'n at 33-34), the Act would not govern the determination of whether plaintiff is "disabled" for the purposes of her

finds that plaintiff has failed to "produce sufficient evidence that [her] employer's asserted legitimate non-discriminatory reason[s] . . . [were] not the actual reason[s] and that [plaintiff] suffered discrimination on an impermissible ground."[5]  *Baloch*, 550 F.3d at 1197.

A.     **Failure to Exhaust**

Exhaustion under the Rehabilitation Act is a jurisdictional requirement.  The Act "limits judicial review to employees 'aggrieved by the final disposition' of their administrative 'complaint,' thereby mandating administrative exhaustion."  *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006) (quoting 29 U.S.C. § 794a(a)(1)).  Where there is "no administrative complaint and thus no final disposition of one," *id.*, courts must dismiss the disability claim for lack of subject matter jurisdiction.  *See, e.g.*, *Rand v. Geithner*, 609 F. Supp. 2d 97, 100 (D.D.C. 2009).  By contrast, exhaustion under Title VII is mandatory but not jurisdictional, *see Douglas v. Donovan*, 559 F.3d 549, 556 n. 4 (D.C. Cir. 2009), and non-exhaustion must be raised as an affirmative defense.  *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).

Federal employees who believe that they have been the victim of disability discrimination or retaliation must contact an EEO counselor with forty-five days of the allegedly discriminatory act (or its effective date, in the case of a personnel action).  29 C.F.R. § 1614.105(a)(1); *see also id.* § 1614.103(a) (defining "retaliation" complaints as "discrimination" complaints for purposes of contacting EEO counselor).  The positions advertised in vacancy announcements NEU-05-90, HRMS 05-165, and OSP-05-221A were filled, respectively, on August 23, 2005; September 30, 2005; and March 9, 2006.  (*See* Chavers Dep. at 130:1-5; Compl. ¶ 39-40.)  Yet plaintiff's first contact with an EEO counselor regarding any of her non-selection claims did not occur until

---

discrimination claim.

[5] The Court's conclusion that plaintiff has failed to cast doubt upon her employer's reasons is equally applicable to her claims under the Rehabilitation Act and Title VII.

September 25, 2006, over a year after the first non-selection and over six months after the third

one.  Because ORM rejected as untimely her attempt to file an administrative complaint

regarding her first three non-selections, there was "no administrative complaint and thus no final

disposition of one" for those three claims.  *Spinelli*, 446 F.3d at 162.

Plaintiff argues that the Court should equitably toll the time limit for exhausting her first

three non-selection claims because she "was dealing with the trauma of Mr. Rogers' sexual

assault," and she "was not aware that [d]efendant was retaliating and discriminating against her

until she was able to observe a pattern of retaliation and discrimination based on [d]efendant's

continued failure to select her for promotion . . . ."  (Opp'n at 25-26.)  The doctrine of equitable

tolling is not applicable to jurisdictional deadlines such as those imposed by the Rehabilitation

Act's exhaustion requirements.  *See Slinger Drainage, Inc. v. E.P.A.*, 237 F.3d 681, 682 (D.C.

Cir. 2001) (noting Supreme Court's comment that mandatory and jurisdictional time limits "'are

not subject to equitable tolling'" (quoting *Stone v. Immigration & Naturalization Serv.*, 514 U.S.

386, 405 (1995)).  And although the doctrine can be applied to Title VII's non-jurisdictional

exhaustion deadlines, plaintiff's case does not merit its application.

"[C]ourts should exercise their equitable power to toll the statute of limitations 'only in

extraordinary and carefully circumscribed instances.'"  *Belton v. Shinseki*, 637 F. Supp. 2d 20, 24

(D.D.C. 2009) (quoting *Mondy v. Sec'y of Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988)).  In Title

VII cases, equitable tolling of a statute of limitations can be appropriate where a party "make[s]

diligent but technically defective efforts to act within a limitations period," was "misled about

the running of a limitations period," or "neither knew nor had reason to know about the limit."

*Bowden*, 106 F.3d at 438.  Courts consider "a plaintiff's intelligence and familiarity with the

process" when determining whether equity counsels in favor of excusing a failure to exhaust.

*Broom v. Caldera*, 129 F. Supp. 2d 25, 29 (D.D.C. 2001).

Here, there is no evidence that plaintiff was unaware of the exhaustion time limit or that defendant prevented her from contacting an EEO counselor.  *See Hayes v. Chao*, 592 F. Supp. 2d 51, 57 (D.D.C. 2008); *see also Mondy*, 845 F.2d at 1057.  In addition, the record shows that even before any deadline had passed for the non-selections at issue, plaintiff was familiar with the process of filing administrative grievances.  She reported the Rogers incident to the EEO office on June 14, 2005, spoke with an ORM representative about the incident on August 10, and filed a formal discrimination complaint on September 14.  (*See* Compl. ¶¶ 33-34; Reply, Ex. 3 (EEO Compl., Sept. 14, 2005) ¶ 13.)  She was also familiar with filing a non-selection complaint, having done so in 2004 to seek "feedback" on why she was not selected for several positions. (*See* Chavers Dep. at 101-02.)  Finally, plaintiff's argument that she was too traumatized by the June 2005 Rogers incident to comply with EEO procedures following the August 2005 non-selection is undermined by the fact that (1) she was contemporaneously complying with EEO procedures for the Rogers incident, and (2) she had no difficulty emailing Keith Manning on August 25 to inquire why she was not selected for the NEU-05-90 position and to challenge the selected candidate's qualifications as inferior to her own.  (*Compare* Chavers Dep. at 130-31 *and* Chavers-Manning Emails at 1 *with* Chavers Dep. at 128:8-24 (reading her prior explanation in Kruger-Deal emails that she did not timely exhaust her administrative complaint because "[her] life as [she] knew it was totally disrupted").)  Nothing in the record suggests that following her second and third non-selections, plaintiff could not have exercised similar diligence in pursuing an EEO complaint or investigating and challenging the qualifications of the individuals selected

for the HRMS 05-165 and OSP-05-221A positions.[6]  The Court therefore concludes that the facts underlying plaintiff's explanations "do[] not constitute the type of 'extraordinary' circumstance[s] that merit[] equitable tolling of the forty-five day limit."  *Belton*, 637 F. Supp. 2d at 24.

Count 2 will be dismissed for lack of subject matter jurisdiction to the extent that it is based on the non-selections for vacancy announcements NEU-05-90, HRMS 05-165, and OSP-05-221A.  *See Spinelli*, 446 F.3d at 161-62; *Rand*, 609 F. Supp. 2d at 100.  Summary judgment will be granted on Count 3 to the extent that it is based on those same non-selections.

### B.     Vacancy Announcement DEN-06-45

It is undisputed that for the Dental Service's Administrative Officer position advertised in vacancy announcement DEN-06-45, Haggan interviewed eleven people, asked them the same questions, and reviewed applications with three characteristics in mind (with particular emphasis on the first): "(1) the ability to act independently, (2) experience in supervising other employees, and (3) overall knowledge of the VA and how it operated."  (Def.'s SMF ¶¶ 37, 39.)[7]  It is also

---

[6] There is no merit to plaintiff's argument that equitable tolling is appropriate because the non-selections were part of a "pattern and practice of discrimination" that constituted a "continuing violation," such that she could not have known to pursue the claims until the supposed pattern of retaliation became obvious.  (Opp'n at 26.)  This argument is unpersuasive as a matter of both law and fact.  First, not only are "pattern-or-practice claims . . . generally brought by a class rather than an individual plaintiff," but "'[c]ourts have been wary of plaintiffs transforming what would otherwise be claims of discrete discrimination into a pattern and practice claim to avoid the statute of limitations . . . .'"  *Hayes*, 592 F. Supp. 2d at 56 (quoting *Major v. Plumbers Local Union No. 5*, 370 F. Supp. 2d 118, 127 (D.D.C. 2005)).  This is because denials of transfers and failures to promote or hire are "[d]iscrete acts" that are "easy to identify," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002), and "a plaintiff must satisfy the filing requirements for each discrete act of discrimination."  *Hayes*, 592 F. Supp. 2d at 56; *accord Morgan*, 536 U.S. at 114.  Second, plaintiff's argument is undermined by the evidence, because her first non-selection in August 2005 was already sufficient, standing alone, to "raise[] many concerns" in her mind since she perceived herself as being more qualified than the applicant.  (Chavers-Manning Emails at 1.)

[7] Plaintiff denies that Haggan considered these characteristics (*see* Pl.'s SMF at 12 ¶ 39),

undisputed that plaintiff and Angela Johnson were among the top-ranked applicants.  (*Id.* ¶ 38.)[8]

Haggan ultimately selected Angela Johnson over plaintiff because Johnson gave a "superior"

response to a hypothetical "Fee Basis Scenario" designed to gauge applicants' ability to act

independently in the workplace, and because she satisfied Haggan's other two criteria since she

was already supervising over thirty employees at the Richmond VAMC and had previously

worked in the D.C. VAMC's director's office.  (*See id.* ¶¶ 40-42; Mot., Ex. 3 (Glenn Haggan

Dep., Nov. 3, 2008) ("Haggan Dep.") at 16-22, 31-32.)[9]

     "[An] employer has discretion to choose among equally qualified candidates, provided

the decision is not based upon unlawful criteria."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450

U.S. 248, 259 (1981).  Therefore, "[i]n order to justify an inference of discrimination," the

"qualifications gap" between candidates "must be great enough to be inherently indicative of

discrimination."  *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006).  No such qualifications

gap exists here.

     Plaintiff does not dispute that Johnson had experience as a supervisor within the VA

system (*see* Pl.'s SMF at 13-14 ¶ 42; *see also supra* note 7), nor does plaintiff assert that her own

---

but this denial does not comply with Local Civil Rule 7 because it is not supported by a citation
to record evidence.  *See* Local Civ. R. 7(h) (requiring non-moving party's statement of factual
issues to "include references to the parts of the record relied on to support the statement").  As
such, plaintiff has not raised any genuine issue with respect to this factual assertion by defendant.
*See Adesalu v. Copps*, 606 F. Supp. 2d 97, 103 & n. 4 (D.D.C. 2009) (declining, in Title VII
case, to recognize plaintiff's denial of defendant's asserted material fact where he failed to
comply with Rule 7's requirement that denials must be supported by citation to record evidence).

   [8] Plaintiff denies this (*see* Pl.'s SMF at 12 ¶ 38), but the denial is unsupported by any
record citation, and plaintiff admits elsewhere that Haggan stated that she was one of the top-
ranked candidates.  (*See* Chavers Decl. ¶ 67.)  The denial therefore fails to create a genuine
factual dispute.  *See supra* note 7.

   [9] Plaintiff denies these were Haggan's reasons (*see* Pl.'s SMF at 13-14 ¶¶ 41-42), but the
denial is unsupported by any record citation, and plaintiff admits that Haggan claimed that he
selected Johnson because of her response to the Fee Basis Scenario.  (*See* Chavers Decl. ¶ 68.)
The denial therefore fails to create a genuine factual dispute.  *See supra* note 7.

"overall knowledge of the VA and how it operated" was significantly superior to Johnson's. (*See* Pl.'s SMF at 12 ¶ 39.)  Rather, she argues that she was more qualified than Johnson because she possessed credentials that Johnson lacked, including a college degree, and greater supervisory experience from her time in the military.  (*See* Opp'n at 27.)  She also suggests Johnson's response to the Fee Basis Scenario was not superior to her own, because Johnson's response was inconsistent with VA handbook regulations.  (*Id.* at 13; Pl.'s SMF at 13 ¶ 41.).

Plaintiff's contentions are beside the point.  They are based only upon "her own self-perception of her credentials, which is irrelevant for purposes of establishing discriminatory or retaliatory conduct."  *Talavera v. Fore*, No. 07-CV-720, 2009 WL 2731275, at *15 (D.D.C. Aug. 31, 2009) (Bates, J.); *accord Waterhouse v. District of Columbia*, 124 F. Supp. 2d 1, 7 (D.D.C. 2000) ("'[P]laintiff's perception of h[er]self, and of h[er] work performance, is not relevant.'" (quoting *Smith v. Chamber of Commerce of the U.S.*, 645 F. Supp. 604, 608 (D.D.C. 1986)), *aff'd*, 298 F.3d 989, 995 (D.C. Cir. 2000).  "It is the perception of the decisionmaker which is relevant," *Smith*, 645 F. Supp. at 608, and Haggan concluded that Johnson's experiences and interview best reflected the characteristics he sought.  "Selecting a pool of qualified candidates based upon their written credentials and then making a final selection based upon personal interviews is an obviously reasonable method of hiring a professional employee."  *Fischbach v. Dist. of Columbia Dep't of Corr.*, 86 F.3d 1180, 1183-84 (D.C. Cir. 1996).  Because Haggan "had the benefit of [his] prior determination" that plaintiff and Johnson were already among the most qualified applicants, and because his hypothetical question "concerned the way in which the applicant would approach the job[,] [t]here is nothing the least bit fishy about the interviewer['s] giving slightly less emphasis to the applicants' credentials" – assuming *arguendo* that Haggan did so – "than to the manner in which each candidate proposed to do the job . . . ."

*Id.* at 1184 (footnote omitted).

Plaintiff has provided no evidence to cast doubt on defendant's assertion that Haggan believed Johnson had sufficient experience as a supervisor and familiarity with the VA system. And because Haggan concluded that Johnson's response to his hypothetical was "[e]xactly" what he would "expect [his] assistant to do" in that situation (Haggan Dep. at 22:15-22), it is irrelevant that plaintiff believes that Haggan should have preferred her response.[10]  "Once the employer has articulated a non-discriminatory explanation for its action, as did the [agency] here, the issue is not 'the correctness or desirability of the reasons offered but whether the employer honestly believes in the reasons it offers.'"  *Fischbach*, 86 F.3d at 1183 (quoting *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992)) (brackets and ellipses omitted).  In other words, a district court judge does not sit as a "'super-personnel department that reexamines an entity's business decisions.'"  *Id.* (quoting *Dale v. Chi. Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986); *accord Adeyemi*, 525 F.3d at 1227.

Because Haggan's "stated belief[s] about the underlying facts" regarding his decision to select Johnston for Dental Service position are reasonable "in light of the evidence," *Brady*, 520 F.3d at 495, and because plaintiff has failed to cast doubt upon the proffered reason for her non-selection,[11] the Court grants summary judgment as to Counts 2 and 3 to the extent they are based

---

[10] It is also irrelevant whether plaintiff's response was more consistent with the VA handbook than Johnson's.  The cited regulation does not, on its face, establish that Johnson's response was objectively inferior to plaintiff's (*see* Opp'n, Ex. 14 (VA Handbook 1130.01) ¶ 13(a)), so it is not the Court's place to second-guess Haggan's preference for one response over the other.

[11] The Court rejects plaintiff's suggestion that discrimination should be inferred from defendant's failure to comply with certain reporting and notice regulations governing situations where an agency overlooks a candidate with "veterans['] preference status to select a non-veteran non-preference candidate with inferior qualifications."  (Opp'n at 28.)  As discussed, there is no evidence that Johnson possessed inferior qualifications.  In addition, any failure to comply with reporting requirements is not "significantly probative" of discrimination, *Anderson*,

on this non-selection.

### C.   Vacancy Announcement NURS-06-64

As the chief of the Nursing Service, Feaster decided that the person who would fill the NURS-06-64 vacancy "would work directly with [her] as [her] executive assistant." (Mot., Ex. 4 (Geraldine Feaster Dep., Oct .23, 2008) ("Feaster Dep.") at 9:8-10.) That individual would serve as her "right-hand person[] to manage all of the business of the office," so Feaster "decided that "it was important for [her] to make [the selection] decision" directly instead of through an interview panel. (*Id.* at 9:10-14.) It is undisputed that Feaster interviewed three people: plaintiff, Michelle Newman, and another individual who held the same position in the Baltimore VA Medical Center. (Pl.'s SMF at 15 ¶ 46.) In addition, it is undisputed that Feaster selected ten questions from a group of performance-based questions and posed these questions to each candidate. (*See id.* at 15 ¶ 48; *see also supra* note 1.)

---

477 U.S. at 249, because both Haggan and Feaster believed that no such reporting was required. (*See* Haggan Dep. at 24:12-25:3; Feaster Dep. at 30:4-16.) Indeed, case law suggests that plaintiff's veteran status may have been irrelevant to her application because "veterans' preference only applies to initial employment, not to movement of an incumbent employee from one job to another within an agency." *Glenn v. U.S. Postal Serv.*, 939 F.2d 1516, 1523 (11th Cir. 1991); *accord Brown v. Dep't of Veterans Affairs*, 247 F.3d 1222, 1224 (Fed. Cir. 2001) ("[V]eterans are not accorded any preference under the [Veterans' Preference Act] when seeking promotion or intra-agency transfers.").

Plaintiff also failed to discredit Haggan's deposition testimony that at the time he selected Johnson, he was unaware that plaintiff had filed an EEO complaint regarding the Rogers incident. (*See* Haggan Dep. at 33:18-22.) Plaintiff admits that she has no "independent knowledge" or "independent information" that would establish whether Haggan was aware of her EEO activity during the summer of 2005. (*See* Chavers Dep. at 132:8-15.) All she offers is speculation, based on her time working in the VAMC director's office for several months in 2004, that because "it was common practice for the EEO Specialist or Manager to brief the [VAMC] Director concerning EEO complaints filed by employees" and for "[t]he Director to then brief[] the service chiefs," and because Haggan was a service chief, that Haggan "would have attended meetings where EEO complaints were discussed." (*See* Opp'n at 30.) Plaintiff's speculation about what might have happened a year after she stopped working in the Director's office is not evidence that would permit a reasonable jury could to conclude that Haggan lied in his deposition.

Feaster explained that she "thought [Newman] would be a good fit for [her]," and that "in fact, [Newman] was [a good fit]."  (Feaster Dep. at 21:12-14.)  From Feaster's perspective, even though plaintiff and Newman had "similar experiences" and both had "excellent [office] skills," Newman's experiences, qualifications, and references "made her a better candidate."  (*Id.* at 22:9-17.)  Newman had previously managed a legal office as an executive secretary, and she was familiar with computer programs that Feaster felt she needed in her own office.  (*See* Def.'s SMF ¶¶ 49-51; Feaster Dep. at 20-22, 24-27.)[12]  Newman came with "superb" recommendations, and Feaster was "very impressed" with "[h]ow she had managed her career" in her previous position. (Feaster Dep. at 21:7-12.)  Feaster believed that Newman's prior experience working for three attorneys more closely matched what she wanted in a staff assistant, namely someone who "would fit well" in and "manage the flow" of Feaster's "very busy office, [with] lots of documents coming in . . . ."  (*Id.* at 26:21-27:6; *see also id.* at 20-21.)

As with the Dental Service vacancy, plaintiff does not dispute the fact of Newman's specific credentials or experiences.  Rather, she argues that she was more qualified than Newman because she possessed credentials and experience that Newman lacked, including an undergraduate degree, supervisory experience from her time in the military, and experience from a five-month temporary detail to the Staff Assistant position under Feaster's predecessor.  (*See* Opp'n at 27-28; Chavers Decl. ¶ 84; Chavers Aff. ¶ 30.)  For the reasons already discussed, plaintiff's disagreement with Feaster's ultimate assessment of her qualifications is insufficient to cast doubt upon the defendant's proffered reasons for the non-selection.  *See supra* Section III.B

---

[12] Plaintiff denies the fact of Newman's qualifications and recommendations (*see* Pl.'s SMF at 15 ¶¶ 50-51), but the denial is unsupported by any record citation and therefore fails to create a genuine factual dispute. *See supra* note 7.

& note 11.[13]  Accordingly, summary judgment is granted as to Counts 2 and 3 to the extent they are based on this non-selection.

## CONCLUSION

For the foregoing reasons, the Court grants defendant's motion.  Plaintiff's claims under Count 2 with respect to vacancy announcements NEU-05-90, HRMS 05-165, and OSP-05-221A are dismissed for lack of subject matter jurisdiction.  Summary judgment is granted as to all other claims.  A separate Order will accompany this Memorandum Opinion.


_____
/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date:  November 5, 2009

---

[13] Plaintiff also contends that her qualifications were demonstrably superior because Feaster asked plaintiff to train Newman since the latter was not familiar with certain Nursing Service "management systems."  (*See* Opp'n at 28; Chavers Dep. at 146:5-7.)  This does not undercut Feaster's stated rationale that she perceived Newman as being better able "to manage the flow" of that office.  (*See* Feaster Dep. at 26:21-27:6.)

In addition, for the reasons already discussed, *see supra* note 11, plaintiff also fails to provide evidence from which a reasonable jury could infer that Feaster knew of plaintiff's prior EEO activity when she selected Newman.  While there is evidence that McNicholas told Feaster about Rogers' "behavior" (*see* McNicholas Dep. at 23:21-24:3), there is no evidence that Feaster ever learned that plaintiff filed an EEO complaint about that behavior.